## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **MIKLE J. MORGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:05-0927** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion for Summary Judgment (Doc. No. 12.) and the Defendant's Motion for Judgment on the Pleadings. (Doc. No. 14.) Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Mikle J. Morgan (hereinafter referred to as "Claimant"), filed an application for SSI on March 16, 2004 (protective filing date), alleging disability as of June 1, 1998, due to bilateral knee and ankle pain. (Tr. at 54, 55-59, 74.) The claim was denied initially and upon reconsideration. (Tr. at 32-34, 39-41.) On November 22, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 43.) The hearing was held on July 27, 2005, before the Honorable John T. Yeary. (Tr. at 302-38.) By decision dated August 24, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-22.) The ALJ's decision became the final decision of the Commissioner on October 7, 2005, when the Appeals Council denied Claimant's

request for review. (Tr. at 6-8.) On November 22, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffered from status-post left knee surgery, status-post bilateral ankle fractures, and degenerative disc disease, which were severe impairments. (Id.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.) The ALJ then found that Claimant had a residual functional capacity for work at the sedentary level of exertion, with the following limitations:

> He can occasionally push/pull with his lower extremities. He can never climb ladders, ropes, scaffolds. He can occasionally climb ramps and stairs, balance, stoop, crouch, crawl, or kneel; he should avoid concentrated exposure to extreme cold, vibration, and hazards (moving machinery, heights, etc.); and he experiences mild to moderate pain but could be attentive to and carry out the assigned work tasks.

(Tr. at 18.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 20.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a food checker, a telephone worker, and an assembler, at the sedentary level of exertion. (Tr. at 21.) On this basis, benefits were denied. (Tr. at 21-22.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on November 15, 1956, and was 48 years old at the time of the administrative hearing. (Tr. at 20, 55, 307.) Claimant has a high school education. (Tr. at 20, 80, 308.) In the past, he worked as a construction laborer. (Tr. at 20, 90-91, 308, 330-31.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's pain and credibility. (Pl.'s Br. at 19-20.) The Commissioner asserts that Claimant's argument is without merit and that substantial evidence

supports the ALJ's decision. (Def.'s Br. at 9-14.)

<u>Analysis</u>.

<u>Pain and Credibility Assessment</u>.

Claimant argues that the ALJ improperly evaluated his subjective complaints of pain and erred in finding Claimant not entirely credible. (Pl.'s Br. at 19-20.) Claimant offers no specific argument, merely stating that the ALJ failed to evaluate the effect of pain on his ability to work and that his pain rendered him disabled. (<u>Id.</u>) The Commissioner asserts that the ALJ's pain and credibility analysis was in accordance with the applicable law and Regulations. (Def.'s Br. at 11-14.)

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b) (2004); SSR 96-7p; <u>see also</u>, <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. <u>Id.</u> at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. <u>Hyatt v. Sullivan</u>, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2004). Additionally, the regulations provide that:

[w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

(I) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms.

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence

6

of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

As previously noted, Claimant makes no specific arguments regarding pain and credibility. He simply alleges that the ALJ failed to evaluate properly the effect of pain on his ability to work. (Pl.'s Br. at 19-20.) The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 18-20.) The ALJ then summarized Claimant's testimony from the administrative hearing, including his statements regarding his impairments and symptoms, medications, activities, and functional limitations, in accordance with the factors to be considered in assessing credibility. (Tr. at 18, 20.) The ALJ considered the requisite factors, noting that Claimant alleged constant knee pain which was aggravated by walking and climbing steps, ankle pain that was worse in the afternoon and with movement, and back pain nearly all the time. (Tr. at 18.) The ALJ also considered Claimant's use of a cane for stability and his testimony that he could walk only 100 yards, lift less than 26 pounds, and that at times, he was able to sit or stand for two hours at a time. (Id.) After evaluating Claimant's testimony and written

7

statements, the ALJ concluded that although Claimant produced evidence of impairments that could reasonably be expected to cause the alleged symptoms, he was not fully credible as to the frequency and severity of his symptoms or as to the extent of his functional limitations during the relevant time period. (Id.)

The ALJ pointed out inconsistencies in Claimant's testimony, noting that although Claimant alleged that he used a cane for stability, Dr. Gobunsuy reported that Claimant was able to stand on one leg at a time (Tr. at 19, 144.), and Dr. Mrozek reported no instability with weight-bearing. (Tr. at 19, 271.) With regard to Claimant's allegations of constant knee pain, which he rated at a level seven out of ten, the ALJ found that Claimant advised Dr. Ballou on April 6, 2005, that he experienced early morning stiffness but that his knee was only a little sore at the end of the day. (Tr. at 19, 291.) The ALJ acknowledged Dr. Gobunsuy's consultative examination of Claimant on June 29, 2004, during which he noted that Claimant was comfortable in the sitting and supine positions, walked with no obvious limp or antalgia, and had no difficulty arising from the sitting position. (Tr. at 19, 144.) Dr. Gobunsuy observed no muscle weakness or atrophy, only diminished light touch sensation in the left thigh, and crepitus in the knees bilaterally without synovial thickening or swelling. (Id.) Additionally, Claimant was able to walk on his heels, toes, heel-to-toe tandem, and stand on one leg at a time. (Id.) Claimant had normal range of motion of the lumbar spine and non-tender ankles. (Id.) Dr. Gobunsuy diagnosed early degenerative changes of the left knee, possible talocalcaneal post-traumatic arthritis, and possible lumbar disc disease. (Id.)

The ALJ noted further inconsistencies in the record concerning Claimant's allegations of constant headaches for which he received treatment for the last two years. (Tr. at 19, 310.) On July 10, 2003, Claimant denied headaches (Tr. at 19, 203.), yet on February 16, 2005, he reported frequent headaches. (Tr. at 19, 267.) Claimant reported a history of cluster headaches on February

14, 2005 (Tr. at 19, 271.), and severe headaches on February 22, 2005. (Tr. at 19, 280.) The ALJ thus found that these varying reports were inconsistent with Claimant's testimony that he suffered from constant headaches for the last two years.

Finally, the ALJ found that although Claimant alleged disability beginning June 1, 1998, and testified that he last worked as a carpenter in 1998 (Tr. at 19, 308.), the evidence of record indicated that Claimant worked subsequent to 1998. Specifically, Claimant reported to Dr. Gobunsuy on June 29, 2004, that he last worked as a carpenter three years ago, or in 2001. (Tr. at 19, 143.) Dr. Alvarez noted on November 20, 2002, that Claimant was a roofer and first experienced pain while working. (Tr. at 19, 169.) Additionally, Claimant was instructed in the emergency room on September 24, 2002, not to work for two days. (Tr. at 19, 236.) Dr. McFarlane similarly noted on July 11, 2003, that Claimant worked as a construction worker. (Tr. at 19, 201.) Claimant, however, reported on February 16, 2005, that he had been unemployed since 1991 (Tr. at 19-20, 267.), and indicated on February 22, 2005, that he last worked seven years ago, or in 1998. (Tr. at 20, 281.) Based on the aforementioned inconsistencies the ALJ thus found that Claimant's testimony was not entirely credible. (Tr. at 20.) The ALJ's decision indicates that the ALJ considered Claimant's subjective symptoms and pain and accommodated those limitations to the extent he found them credible, in assessing Claimant's residual functional capacity. (Tr. at 18.)

The ALJ however failed to consider the side effects Claimant suffered from his prescription medications. In his "Disability Report - Adult," dated August 11, 2004, Claimant reported that he was taking, *inter alia*, Orudis and Flexeril for his knee and back pain, and indicated that these medications caused him to experience drowsiness as a side effect. (Tr. at 105.) Similarly, in his "Disability Report - Appeal," dated November 15, 2004, Claimant reported taking Celebrex, Flexeril, and Ultram, and again indicated that these medications caused him to experience

drowsiness and nausea as side effects. (Tr. at 136.) Claimant's attorney submitted a medication list on February 22, 2005, which indicated that Claimant continued to take these prescribed medications. (Tr. at 140-41.) Claimant also testified at the administrative hearing that his pain medication caused him to experience sleepiness (Tr. at 310, 328.), and that he took daily naps ranging from one to four hours in duration. (Tr. at 327.) Additionally, Claimant reported in his form "Activities of Daily Living," dated April 20, 2004, that he took naps during the day. (Tr. at 83.) On questioning the vocational expert, Claimant's counsel inquired whether he could identify any jobs for an individual who had to lie down one or two hours a day because the side effects of his medication made him sleepy. (Tr. at 335.) The vocational expert responded that he could not identify any jobs with those limitations. (Id.) The ALJ noted in his decision that Claimant was prescribed pain medication (Tr. at 16-17, 18.), failed to discuss what, if any, side effects Claimant experienced which might have impacted his residual functional capacity, and failed to assess the credibility of Claimant's testimony in these regards. It is evident from the record that Claimant was prescribed medications which might have produced adverse side effects and reported it at the administrative hearing. It was the ALJ's responsibility to sort through the evidence and make findings in these respects. It is not the Court's responsibility to do so. The Court therefore finds that the ALJ's analysis is deficient, and this matter must be remanded for further consideration of the evidence of the side effects of medications which Claimant is prescribed, the credibility of his statements about them, and what, if any, bearing they have upon Claimant's residual functional capacity.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Doc. No. 12.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 14.) is **DENIED**, the final decision

of the Commissioner is **VACATED**, and this matter is **REMANDED** to the Commissioner for further proceedings consistent herewith under the fourth sentence of 42 U.S.C. § 405(g) and **DISMISSED** from the docket of this Court.

      The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

      ENTER: March 26, 2007.

R. Clarke VanDervort
United States Magistrate Judge

11